UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MELISSA JAN BALLARD ARCHER,       )
                                   )
    *Plaintiff*                      )
                                   )
v.                                 )     No. 1:13-cv-18-NT
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social Security,[1] )
                                   )
    *Defendant*                      )


## REPORT AND RECOMMENDED DECISION[2]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge erred in evaluating her credibility, weighing the opinions of her treating professionals, and in assessing her fibromyalgia. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from obesity, chronic major depressive disorder, and an anxiety disorder, impairments that were severe but which, considered separately or in combination, did not meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 11, 2013, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Record at 15-16; that she had the residual functional capacity ("RFC") to perform light work, but that she should never climb ladders, ropes or scaffolds, could frequently balance, stoop, kneel, crouch or crawl, should avoid hazards or uneven walking surfaces, was limited to simple, routine, repetitive tasks and instructions and occasional changes in the workplace, could tolerate occasional, brief and incidental interaction with the public, and should not work with the public, in public or in crowded areas, Finding 5, *id*. at 17; that, given her age (41 at the alleged date of onset of disability, April 16, 2009), high school education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 21; and that, therefore, she had not been under a disability, as that term is defined in the Social Security Act, at any time form April 16, 2009, the alleged date of onset, through the date of the decision, November 10, 2011, Finding 11, *id*. at 22. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner. 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S.

137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Credibility

The plaintiff asserts that the administrative law judge's evaluation of her credibility was based on "factual errors" that "color[ed] the way in which the ALJ view[ed] the medical evidence." Itemized Statement of Specific Errors ("Itemized Statement") (ECF No. 10) at 2. The administrative law judge said the following about the plaintiff's credibility:

> [W]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.
> 
> * * *
> 
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The undersigned specifically finds the claimant's complaints regarding concentration and attention are not supported in the medical evidence. There are no formal tests[] which measure concentration and attention in the medical record, and the allegations are based only on the claimant's complaints.
> 
> * * *
> 
> The claimant expresses consistent complaints of depression and has been in consistent treatment, [but] the claimant's symptoms are not entirely credible. She has managed to oversee her household and take care of her children throughout the relevant time. In August 2009, the claimant reported feeling better and was noted to be sunburned, suggesting outside activities (Ex. 2F pg. 21). Her therapist noted improvement since her onset but that she was not at baseline ([*Id.*] pg. 20). . . . In April 2010, her physician noted no anxiety, no depression and that the claimant was in a good general state of health (Ex. 4F pg. 1). Nurse practitioner Chandler noted improvement in the claimant's mood and

> affect even though it was slow improvement (Ex. 16F). The claimant's complaints are inconsistent throughout the record and she reports improvements to her nurse practitioner Chandler and her general practitioner, Dr. Hershfeld[,] but frequently reports little or no change to her therapist. The claimant's nurse practitioner noted the claimant's depression had improved by clinical signs although the claimant did not subjectively express improvement.

Record at 18-19.

The specific alleged factual errors identified by the plaintiff are: the administrative law judge "incorrectly believed" that the plaintiff's children were aged 10, 8, and 2 when they were in fact 19, 10, and 8; and the administrative law judge "has [the plaintiff], without qualification, handling savings and checking accounts . . . [and] paying bills," despite her testimony that her husband had to check her bill-paying and she could not balance the accounts. Itemized Statement at 2. The error in the ages of the plaintiff's children is mentioned in the administrative law judge's discussion of the plaintiff's credibility, Record at 18, but there is no suggestion that the administrative law judge relied on these ages in his evaluation of the plaintiff's credibility. The plaintiff asserts that the administrative law judge "may have believed Plaintiff was [caring for] a two year old," Itemized Statement at 2, but the decision does not so state, and the page of the transcript of the hearing cited by the plaintiff does not support her speculation.

As for the second alleged error, the plaintiff offers nothing beyond her speculation that "[u]nimpeded or impaired home banking goes directly to attention and concentration, which is essentially where the entire case turns . . . . It was in fact testified to as the primary problem resulting from her depression[.]" *Id*. The testimony cited by the plaintiff in support of this statement is only her own. The administrative law judge's opinion says only, in a section not

dealing with credibility, that the plaintiff "handles a savings and checking account although she does not pay bills." Record at 16.[3]

These facts, even when combined with the speculative nature of the plaintiff's unsupported assertion that "impaired home banking goes directly to attention and concentration," means that she has not demonstrated entitlement to remand on this basis. *See, e.g.,* Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2013) at 133 ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements . . ., statements and other information provided by treating or examining physicians . . . and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."). Here, the administrative law judge's credibility findings were supported by specific findings other than those imputed to him by the plaintiff. That is all that is required. *E.g., Gray v. Astrue*, No. 2:11-cv-391-GZS, 2012 WL 3024118, at *4 (D. Me. June 26, 2012).

### B. Mental Status Examinations

The plaintiff next asserts that the administrative law judge's statement that "[t]here are no mental status examinations performed in the medical record," Record at 17, is "patently untrue." Itemized Statement at 3. She does not explain why this "untruth" entitles her to remand. The statement appears in the opinion before the discussion of her credibility, so this cannot be one of

---

[3] The plaintiff faults the administrative law judge for stating later in his opinion, in his discussion of her credibility, that she testified that she could "pay bills," Record at 18. She did in fact testify that she would "write out the checks, even if my husband has a bill." *Id.* at 49. Whether writing out checks with which bills are paid but not balancing the checkbook after doing so constitutes "paying bills," is too fine a point upon which to rest remand of an administrative law judge's decision. Remand requires a showing that the outcome of the claim for benefits would likely be different if the plaintiff's view of an issue is correct. This quibble does not meet that standard.

5

the "factual errors" that she argued required reversal based on that portion of the opinion. I will address this as a stand-alone argument for remand.

The plaintiff first cites a record of a mental status examination dated October 13, 2009, by Lourdes Soto-Moreno, M.D., who she says is a psychiatrist. *Id*. She does not indicate how the administrative law judge's recognition of this as a mental status examination would change the outcome of her claim for benefits. On its face, the report is not inconsistent with the administrative law judge's finding that the plaintiff had moderate difficulties with concentration, persistence or pace. Record at 17.

The plaintiff next asserts that evaluations performed by psychiatric nurse practitioner Rebecca Chandler "do include M[ental] S[tatus] E[xaminations]," citing several pages of the record and asserting that at some uncited point "further in the record it says 'FHBS: Mental Status Examination.'" Itemized Statement at 3. Many of the pages of the record cited by the plaintiff in this regard are entitled "outpatient progress notes," Record at 339-40, 324-25, 407, and 485-86, and no reason is given why, nor any authority cited for the proposition that, such records should be considered to be records of mental status examinations. That is not a matter within general lay knowledge. The remaining cited pages do record mental status examinations, *id*. at 514, 516, and 518, but, again, nothing in those records is necessarily inconsistent with the administrative law judge's evaluation of the plaintiff's mental limitations, and the plaintiff does not suggest how any one of these entries would require a different outcome.

Next, the plaintiff asserts that "psychologist Mark Holbrook . . . of course conducted a MSE" and his notes "appear to have elements of a MSE." Itemized Statement at 3. The plaintiff cites no authority for the necessarily-implied argument based on the latter assertion: that an administrative law judge must deem all notes that "appear to [contain] elements of" a mental

status examination to be records of mental status examinations, and that the failure to do so provides grounds for remand. Remand on the basis of such a technicality would serve little or no practical purpose. Dr. Holbrook's discharge note includes a section entitled "Mental Status," Record at 531, which suggests that he did perform a mental status examination. Again, however, the plaintiff does not explain how acknowledgment of this fact would change the outcome of the administrative law judge's review of her claim. Indeed, Dr. Holbrook's findings in this section of his discharge note would not support the mental limitations included in the RFC assigned to the plaintiff by the administrative law judge. The plaintiff takes nothing by this alleged error.

Finally, the plaintiff asserts, Itemized Statement at 3-4, that the administrative law judge "ignored" "objective testing" performed by "PCP Janice Lee" and "LCSW Deri," which contradict his statement that "[t]here are no formal tests[] which measure concentration and attention in the medical records[.]" Record at 18. She asserts that this statement "appears to be untrue[,]" Itemized Statement at 4, but again fails to describe how a correction would require remand. Contrary to the plaintiff's primary assertion, there is no record of objective testing of the plaintiff's concentration and attention by Janice R. Lee, D.O., reported at page 509 of the Record, which is the page cited by the plaintiff in this regard, nor at the pages cited in connection with Rosalie F. Deri, LCSW, *id*. at 422, 424-425, which instead is an inventory of the plaintiff's subjective report of possible depression symptoms, and says nothing about concentration or attention.

The asserted errors with respect to mental status examinations, as presented by the plaintiff, do not entitle her to remand.

### C. Fibromyalgia

The plaintiff argues that the administrative law judge was required to find that she suffered from the severe impairment of fibromyalgia because that condition was diagnosed by a rheumatologist, and, "[i]f the evidence from such an acceptable medical source is found lacking, p.7, Defendant is to go back for clarification." Itemized Statement at 4-5. The first argument is incorrect, and the second oversimplifies the applicable regulation.

My review of the records of Dr. Lee Kendall, the rheumatologist to whom the plaintiff was referred by Dr. Lee, her primary care physician, Record at 584, confirms the administrative law judge's conclusion that he determined that "the claimant's condition might be related to Fibromyalgia but did not make a definitive diagnosis." *Id*. at 16; *see id.* at 580, 584-86. Even if the diagnosis had been definitive, however, the plaintiff does not explain how the mere diagnosis of fibromyalgia would require a remand in her case; for example, she does not identify the work-related physical limitations, necessarily implied by the diagnosis alone, that are not included in the RFC assigned to her by the administrative law judge, supported by citations to authority.

The itemized statement suggests that the mere fact that the diagnosis was made by a specialist requires that it be adopted by the administrative law judge. Itemized Statement at 4-5. Social Security law is to the contrary. "We cannot rely upon the physician's diagnosis alone." Social Security Ruling 12-2p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2013), at 461. Further, "[e]ven if [a plaintiff has] been diagnosed with fibromyalgia by a qualified physician . . . not every suggestion of fibromyalgia requires a conclusion that the condition is 'severe' or that it results in disability." *Calkins v. Astrue*, No. 1:11-cv-728, 2012 WL 5467521, at *8 (S.D. Ohio Nov. 9, 2012).

8

The contention that the administrative law judge must have found the evidence of fibromyalgia from Dr. Kendall to be "lacking," and, therefore, was required "to go back for clarification," Itemized Statement at 5, refers to 20 C.F.R. § 404.1512(e), which provides that an administrative law judge will "recontact" a medical source "[w]hen the evidence we receive from your . . . medical source is inadequate for us to determine whether you are disabled." "We will seek additional evidence or clarification . . . when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Id*., § 404.1512(e)(1). The plaintiff makes no attempt to demonstrate that any of these circumstances is present in the administrative law judge's opinion.

In addition,

> [a]n administrative law judge is not required to further develop the record when a claimant is represented, as the plaintiff was here, . . . unless she does not understand any of the treating physicians' records or finds gaps in those records or the records are otherwise inadequate to allow her to decide the case. 20 C.F.R. § 404.1512(e)(1); *see also White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). In order to obtain remand on this basis, the plaintiff must point to specific facts that were not brought out during the hearing and provide proof that additional medical evidence existed. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

*Plato v. Colvin*, Civil No. 1:12-CV-319-DBH, 2013 WL 5348603, at *12 (D. Me. Sept. 24, 2013). The plaintiff's submission does not meet this standard.[4]

---

[4] At oral argument, the plaintiff's attorney argued that the administrative law judge had violated the requirements recognized by this court's opinion in *Huston v. Colvin*, No. 2:12-cv-00282-JAW, 2013 WL 3816615 (D. Me. July 19, 2013), by failing to include unspecified symptoms of the plaintiff's fibromyalgia in her RFC. This argument is not made in the itemized statement and accordingly is waived, but I note both that this interpretation of *Huston* is incorrect and that this case is distinguishable in that the court in that case rejected the commissioner's argument that improperly relied on the opinions of non-examining state-agency doctors who did not "take into account the full panoply of symptoms that ultimately led to the plaintiff's diagnosis of fibromyalgia." *Id*. at *4. Here, the problem is that the plaintiff has not identified evidence of any specific, work-related limitation caused by her fibromyalgia that would necessitate a finding that she was disabled at the relevant time.

### D. Moderate Limitation in Concentration, Persistence or Pace

The plaintiff next attacks the administrative law judge's assignment of "great weight" to some, but not all, of the opinions of Brenda Sawyer, Ph.D., characterizing the administrative law judge's opinion on this point as "[a]t best, . . . confused." Itemized Statement at 5. A 'confused' analysis, standing alone, does not justify remand. The plaintiff must still demonstrate that any error she identifies was not harmless.

The plaintiff contends that "a moderate limitation in attention, concentration, persistence or pace is not encompassed in the RFC given in the Decision," despite the presence of such a limitation in Dr. Sawyer's evaluation. *Id*. The administrative law judge said, in this regard:

> The undersigned considered the opinion of Brenda Sawyer, P[h].D.[,] at Exhibit 7F to be more supported by the evidence of record. Dr. Sawyer determined the claimant had a severe mental impairment, which did not meet a medical listing but did create work related limitations.
> The undersigned gave great weight to the opinion of the claimant's mental residential capacity authored by Dr. Brenda Sawyer and adopted it as the claimant's mental residential functional capacity. See Exhibit 8F pg. 3. The opinion is consistent with the medical evidence of record and includes consideration of the claimant's subjective complaints. It is not inconsistent with any other acceptable medical source opinion of record.

Record at 19-20.

The plaintiff's presentation oversimplifies Dr. Sawyer's opinion. Under the heading "Sustained Concentration and Persistence," Dr. Sawyer assigned a "moderately limited" rating to "The ability to maintain attention and concentration for extended periods"; "The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Record at 444-45. Under the heading "Functional Capacity Assessment" Dr. Sawyer wrote, in pertinent part:

> A. Claimant can understand and remember simple tasks. . . .
> B. Claimant can attend to and persist at simple tasks over the course of a normal workday/workweek. . . .
> C. . . . She has increased anxiety in public places and is not suitable for work with the public or in public and/or crowded areas[.]
> D. Claimant requires a routine with few changes day to day.

*Id*. at 446.

The relevant portion of the RFC assigned to the plaintiff by the administrative law judge is the following:

> She is limited to simple, routine, repetitive tasks and instructions and is limited to occasional changes in the work place. She could tolerate occasional, brief and incidental interaction with the public. She should not work with the public or in public and/or crowded areas.

*Id.* at 17. This portion of the RFC is a nearly verbatim repetition of the conclusions reached by Dr. Sawyer with respect to the plaintiff's functional capacity after consideration of the limitations in sustained concentration and persistence quoted above.

Thus, the plaintiff is asking this court to reject Dr. Sawyer's own conclusions about the plaintiff's work-related capacity in favor of some other, unspecified limitation. Dr. Sawyer is far more qualified to draw those conclusions based on her own findings than is this court.

The plaintiff's assertion that "[w]hen [a moderate limitation in attention, concentration, persistence or pace] was given by Plaintiff to the V[ocational] E[xpert], R 75-77, she could not find sustained work[,]" Itemized Statement at 5, is similarly incorrect. The questions and responses at that point in the hearing were more nuanced. The plaintiff's representative asked the vocational expert to assume that "[t]here was interference with ability to maintain attention and concentration for extended periods ten to twenty five percent of the time." Record at 75. The vocational expert responded that "[u]p to twenty five percent off task I really think would eliminate all jobs in the national economy." *Id*. at 76.

When asked about the effect of inability to maintain attendance up to 10 percent of the time, the vocational expert responded that the attendance requirements of the jobs she had listed would "rule them out." *Id*. When asked "if there were an inability to complete a normal work day and work week without interruption from psychologically based symptoms of performance, resulting in absences once a month, would that preclude [all jobs]," the vocational expert replied that, "at the unskilled level," the jobs that she had listed, as well as all jobs, would be precluded. *Id*. at 77.

However, the problem for the plaintiff here is again that Dr. Sawyer did not include any such limitations in the functional capacity assessment that she provided, *id*. at 446, and, indeed, the questions contradict Dr. Sawyer's conclusion that the plaintiff could "attend to and persist at simple tasks over the course of a normal workday/workweek." *Id*. Dr. Sawyer never says that the plaintiff would be "off task" 25 percent of the time, would be unable to maintain attendance up to 10 percent of the time, or absent once a month. *Id*. at 444-46. The plaintiff may not substitute her own conclusions for those of Dr. Sawyer, even when purportedly based on the moderate limitations noted by Dr. Sawyer, particularly when those conclusions are contrary to Dr. Sawyer's conclusions. This court cannot adopt the plaintiff's conclusions under these circumstances.[5]

### E. Treating Source Opinions

The plaintiff next contends, in very general terms, that the administrative law judge failed to comply with Social Security Ruling 06-03p, by "discount[ing]" "the evidence from Chandler

---

[5] At oral argument, the plaintiff's attorney contended that remand was required because the administrative law judge failed to make the function-by-function analysis required by *Bond v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00054-JAW, 2012 WL 313727, at *10 n.4 (D. Me. Jan. 30, 2012). This argument is absent from the plaintiff's itemized statement and therefore waived. Counsel also asserted at oral argument that the court's decision in this case "must address the tension between" its decisions in *Bond* and *Riley*. Neither case is mentioned in the plaintiff's itemized statement, and no citation was given at oral argument. The only Social Security appeal handled in this court under the name "Riley" is *Riley v. Astrue*, No. 06-95-B-W, 2007 WL 951424 (D. Me. Mar. 27, 2007). No conflict between that opinion and the *Bond* opinion is readily apparent.

and Deri." Itemized Statement at 6. She asserts that their "evidence" is "consistent with the overwhelming medical evidence . . . : Holbrook, Soto-Moreno, Hershfeld, Lee Kendall, Janice Lee, and Brenda Sawyer." *Id*. In conclusory fashion, she states that the administrative law judge "failed to give adequate weight to the opinions of the treating sources," presumably Chandler and Deri, whose "diagnoses were confirmed by acceptable medical sources." *Id*. at 7.

Unfortunately, the plaintiff never identifies the diagnoses of which she speaks, nor does she cite to the pages of the record wherein these diagnoses were confirmed. This presentation is simply inadequate to allow the court to address this portion of the plaintiff's itemized statement.

### F. Hypothetical Question to the Vocational Expert

The plaintiff's final salvo is a purported attack on the hypothetical question posed to the vocational expert by the administrative law judge. *Id*. at 8-9. However, the attack is actually on Dr. Sawyer's "inappropriate vocational conclusions" about the mental limitations that she assigned to the plaintiff. *Id*. at 9. The plaintiff cites no authority to support the necessary logical underpinning of her argument: that an administrative law judge not only may, but must, determine whether a medical expert's conversion of identified limitations into a functional capacity assessment, as the Mental Residual Functional Capacity Assessment requires, is "appropriate." In the absence of a contrary conclusion by a medical professional, neither an applicant for benefits nor the court may second-guess a medical expert's conclusions in this manner.

The plaintiff also argues that her subjective testimony "alone provides foundational substantial evidence to support Plaintiff's hypothetical questions to the VE, and her replies." *Id*. That may well be, but the plaintiff is not entitled to remand unless both the hypothetical question posed by the administrative law judge was without support in the record and the plaintiff's

13

subjective testimony is not inconsistent with any of the medical evidence in the record. Neither circumstance is present here.[6]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of December, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] The plaintiff cites a Social Security Ruling dealing with situations where the only impairment is mental. Itemized Statement at 9. That is not applicable here, where the administrative law judge found that she also suffered from the severe physical impairment of obesity. Record at 15. *See generally Fothergill v. Astrue*, No. 2:11-cv-247-DBH, 2012 WL 1098444, at *2 (D. Me. Mar. 29, 2012).